Flora E. Byrnes, Appellee, v. Retirement Board of Policemen's Annuity and Benefit Fund of City of Chicago, Appellant.

Gen. No. 44,851.

Opinion filed November 1, 1949. Released for publication November 23, 1949.

Benjamin S. Adamowski, Corporation Counsel, and George F. Mulligan, Jr., Assistant Corporation Counsel, for appellant.

MICHAEL F. RYAN, of Chicago, for appellee; RICHARD F. McPARTLIN, JR., of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Flora E. Byrnes filed a petition in common law certiorari to review an order of the retirement board of the policemen's annuity and benefit fund of the City of Chicago denying her application for compensation annuity. The case was tried by the court without a jury on the record returned by the respondent to the writ and resulted in a judgment quashing the record of its proceedings, from which respondent appeals.

There is no dispute as to the salient facts. The deceased husband of petitioner, Patrolman Frank A. Byrnes, entered the Chicago police department on July 1, 1929, and in the course of his employment received creditable mention on several occasions. On the evening of May 24, 1945, he arranged with August Borda, a retired fire captain and a friend of Byrnes, to go fishing the following day. About 9:30 a. m. on May 25, the two men left Borda's home for the 79th street beach in Chicago, taking with them a rowboat. They launched the boat and went fishing off the breakwater near the filtration plant at 78th street. After fishing a couple of hours they decided to leave, since Byrnes had to report for duty at four o'clock that afternoon. In the meantime the anchor had become stuck. Efforts to loosen it caused the boat to overturn, and the two men were thrown into the water. When Borda reached the surface Byrnes was hanging onto the boat, and held out a stick to Borda so that he could pull himself over. As both men were clinging to the boat which was drifting away from shore, Byrnes told Borda he would swim to the breakwater for help. When Byrnes got within ten to fifteen feet of the breakwater he drowned. Meanwhile Borda had drifted out some

57

600 feet with an off-shore breeze. When the wind subsided he was able to paddle to the breakwater while hanging onto the boat, succeeded in attracting the attention of someone on shore and was ultimately rescued by the Coast Guard. Byrnes' body was recovered June 12, and the coroner returned a verdict that he came to his death by drowning. The proceedings instituted by petitioner are predicated on the theory that her deceased husband came to his death in the performance of an act of police duty as defined by the police pension statutes and the rules and regulations of the Chicago police department; and that as the result of his losing his life in the performance of an act of police duty she, as his widow, is entitled to an award of compensation annuity by the respondent.

██ Section 58 of the Act creating the policemen's annuity and benefit fund of the City of Chicago (Ill. Rev. Stat. 1947, ch. 24, par. 1003 [Jones Ill. Stats. Ann. 100.185]) provides: "The retirement board shall have exclusive original jurisdiction in all matters relating to or affecting the fund herein provided for, including, in addition to all other matters, all claims for annuities, benefits, refunds or pensions under this Act, and its action, decision or determination in any matter shall be reviewable by the common law writ of certiorari only; any party to such certiorari proceedings shall have a right of appeal from the decision of the reviewing court." The fund is a pension fund (*Dodge v. Board of Education*, 364 Ill. 547, aff'd 302 U. S. 74, 82 L. Ed. 57, 58 Sup. Ct. Rep. 98), of which the respondent is the board of trustees (Ill. Rev. Stat. 1947, ch. 24, par. 946 [Jones Ill. Stats. Ann. 100.126]) and therefore a quasi-judicial body (*Eddy v. People*, 218 Ill. 611). In a common-law writ of certiorari proceeding a reviewing court has no power to weigh the evidence; it can examine the record only for the purpose of ascertaining whether or not it fairly tends to sustain the

58

action of the inferior tribunal—in this instance the retirement board. In *Carroll v. Houston,* 341 Ill. 531, and *Hopkins v. Ames,* 344 Ill. 527, it was held that a reviewing court has no power to substitute its own judgment for that of the quasi-judicial body. Nevertheless the record indicates that the court in the case at bar attempted, in some measure at least, to weigh the evidence. This is shown by the statement of the court that "To me it is a very close question," and again, "It is a close question, there is no question about that, and if the Retirement Board wants to go up on it, let them bear the burden of that expense, not place it on this widow."

 The statute governing the granting of compensation annuity (Ill. Rev. Stat. 1947, ch. 24, par. 977 [Jones Ill. Stats. Ann. 100.157]) requires that proof shall be made establishing the fact that the policeman's death was the result of injury received in the performance of an act of duty and not merely the claim that he risked his life and lost it. As counsel for defendant aptly state: "A causal connection must be established between the performance of duty and the death of the policeman. Compensation annuity cannot be granted upon an assumption or presumption as to the cause of death, or as to the performance of an act of duty, but must be established by proof." In common-law certiorari the law gives to the court only two powers, namely, to quash the writ or to quash the return, and where there is no evidence supporting a claim for compensation annuity and the return shows a finding to that effect by the trustees of the pension fund, it is the duty of the court to quash the writ. In the instant case there is no evidence to show that Byrnes was in the performance of an act of duty. An act of duty is defined in an amendment to the Policemen's Benefit Fund Act (Ill. Rev. Stat. 1947, ch. 24, par. 956 [Jones Ill. Stats. Ann. 100.136]) as follows: "Any act of

police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the Statutes of the State of Illinois or by the Ordinances or Police Regulations of the city in which this Act shall be in force and effect; or any act of heroism performed in such city by a policeman thereof having for its direct purpose the saving of the life or property of another person." It thus appears that this statutory definition embraces two situations: (1) "any act of police duty inherently involving special risk . . . imposed on a policeman by the Statutes of the State of Illinois or by the Ordinances or Police Regulations of the city"; and (2) "any act of heroism." We think that respondent trustees properly concluded that it was not an act of police duty, under the above-quoted definition, for Byrnes to undertake to swim back to shore with the intention of securing aid for his friend Borda. Any person who could swim would have attempted to do so under like circumstances. We think there is considerable force to the contention of respondent that "The nature of the employment of the swimmer does not characterize the nature of the act. The fact that he was a policeman does not make his action any different from that of an ordinary citizen . . . ." Byrnes' effort, however laudable, was not an act of police duty involving special risk not ordinarily assumed by a citizen in the ordinary walks of life, nor an act imposed on him by statute, ordinance or a rule of the police department; it was simply an act which any ordinary man in an ordinary walk of life would have attempted to perform if he could swim; nor does Byrnes' effort fall under the second classification of the definition of an act of police duty since it was not an act of heroism as contemplated in the definition. A policeman in a personally safe position who risks possible injury or death to save the life or property of another, performs

an act of heroism. In such instances he is impelled to perform the act in a situation not created by himself. However, in the case at bar Byrnes and his friend were in pursuit of their own recreation, entirely unrelated to any duty imposed on Byrnes or contemplated by the statute. These reasons undoubtedly actuated the retirement board to deny petitioner's application. It must be conceded that the board had jurisdiction, that it did not exceed its jurisdiction, that it proceeded according to law, that it acted on evidence, and that the evidence fairly tends to support its action. In a common law certiorari proceeding these are the only circumstances which the court may pass on. We are of opinion that the trial judge exceeded his jurisdiction, and accordingly the judgment of the superior court is reversed.

*Judgment reversed.*

SCANLAN and SULLIVAN, JJ., concur.