Thomas Gibbons, Appellee, v. The Retirement Board of the Policemen's Annuity and Benefit Fund of Chicago, Appellant.

## Gen. No. 45,329.

Opinion filed September 26, 1951. Rehearing denied and opinion modified October 11, 1951. Released for publication November 15, 1951.

JOHN J. MORTIMER, Acting Corporation Counsel, and GEORGE F. MULLIGAN, JR., Assistant Corporation Counsel, both of Chicago, for appellant.

MICHAEL F. RYAN, of Chicago, for appellee; RICHARD F. McPARTLIN, JR., of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Plaintiff, Thomas Gibbons, filed a petition for a writ of certiorari to review an order of defendant Board denying his application for disability benefit under the provisions of Illinois Revised Statutes, State Bar Edition 1949, chapter 24, paragraph 989 [Jones Ill. Stats. Ann. 100.169]. The case was tried on the record returned by defendant to the writ, and resulted in a judgment quashing the record of its proceeding. Defendant appeals.

The basic question presented for determination is whether there is any evidence in the record reasonably tending to sustain the decision of defendant Board.

The following facts are shown by the record. April 15, 1938, about midnight, plaintiff was injured as a result of a collision between a patrol wagon in which he was riding and a truck, at the intersection of Harrison and Jefferson streets in the City of Chicago, Cook county, Illinois. After the collision petitioner was taken to the Cook County Hospital and on April 16, 1938 was removed to Alexian Brothers Hospital, where he remained until October 21. The report of the Alexian Brothers Hospital shows that plaintiff was admitted to the hospital "walking," that he suffered pain over the fifth and sixth ribs just inside the left nipple; that there was no pathology of the *head* or *neck;* that plaintiff's appetite was good; that he "slept fair"; and that his condition improved each day until he was discharged on October 21, 1938. According to the hospital records, plaintiff was again admitted to Alexian Brothers Hospital on April 5, 1939, suffering from "acute hallucinosis." He was discharged from the hospital on May 15, 1939. During his stay at the hospital plaintiff was examined by Dr. Victor E. Gonda, a con-

sultant neurologist in the Cook County Hospital and neurologist and psychiatrist at Mercy, Alexian Brothers, and Columbus Memorial hospitals.

In his testimony before the defendant Board, Dr. Gonda stated that he had performed a neuroencephalograph upon the plaintiff; that the encephalogram disclosed that "certain parts of plaintiff's brain were shrunk"; that the destruction "in all possibility was caused by the accident to plaintiff"; and that the behavior of plaintiff subsequent to the injury caused by the collision shows a direct causal connection between the accident and his present condition.

At the request of defendant, Dr. Harold C. Voris, senior neurological surgeon at Mercy Hospital and associated and attending neurological surgeon at Cook County Hospital, and a teacher of neurology at the Stritch school, made an examination of plaintiff on September 1, 1949. In his report to the defendant Board, Dr. Voris stated, among other things: "The patient was garrulous and was not able to give a satisfactory history, apparently because of poor memory. He freely admitted not being able to recall any of the events between 1938 and the present time. From the record at the Alexian Brothers Hospital and from the present findings this patient has suffered from pronounced mental disturbance and at the present time, while orientated and cooperative, has obvious impairment of memory, judgment and insight. From the history, both given by the patient and from the records of the Alexian Brothers Hospital, I am unable to relate this man's symptoms to the injury which he is alleged to have suffered April 15, 1938. That appears to have been a contusion of the chest wall and a mild cerebral concussion with only brief loss of consciousness. I believe that his present symptoms are very likely due to cerebral arteriosclerosis." On cross-examination before the defendant Board by counsel for plaintiff, Dr.

Voris testified that shrinkage of the brain tissue could be caused by many other conditions; that plaintiff suffered from presenile changes which is a chronic condition, and that in his opinion there is no causal connection between the injury alleged to have been received by plaintiff on April 15, 1938 and his present condition.

In the files of the Police Department appeared what purports to be a report of a physical examination of plaintiff made at Alexian Brothers Hospital April 16, 1938, by one Dr. Henry Steible, a police surgeon. That portion of the report headed "Surgeon's Report" states, among the findings: "contusions of head; contusion of right side of chest; X-ray of chest shows no bone pathology; X-ray of head will be taken later." Also among the files of the Police Department appears a report by Dr. Steible dated May 17, 1938, which states, under the heading "Surgeon's Findings": "Contusion of head, contusion of right side of chest—severe contusion of left side of chest with probable tearing of intercostal muscles."

William Gillespie, a policeman who was driving the patrol wagon at the time of the collision which resulted in plaintiff's alleged injuries, testified that plaintiff called at his home about a month after the accident; that prior to the accident he did not observe any "abnormalities" or "anything unusual about plaintiff"; and that plaintiff's mental condition was good.

Anna McGuire, sister of plaintiff, testified that plaintiff resided in her home in 1938 and for approximately two years before; that during this period he acted normally and made no complaints about "head trouble"; that after the accident plaintiff complained that his head bothered him; that he was restless and could not sleep; that on April 3, 1939, the witness received a telephone communication from a hospital in South Bend, informing her that plaintiff was there; and that some-

462

one at the hospital told her plaintiff complained that the water on the train on which he traveled to South Bend had been poisoned. Thereafter plaintiff was returned to Alexian Brothers Hospital April 5, 1939, when Dr. Gonda took the X–ray of plaintiff's brain by means of an encephalogram. The gram was destroyed five years later and therefore not available during the hearing before defendant Board.

Dr. J. E. Kelley, examining physician for the defendant Board, examined plaintiff for the purpose of determining whether he was fit for police duty in 1946. Dr. Kelley certified that plaintiff was unfit for police duty. The record further shows that plaintiff was placed on the sick roll from April 21, 1938, when he was discharged from Alexian Brothers Hospital, until October 21, 1938. There is no indication in the record what work if any he did during this period of six months. October 21, 1938, plaintiff was assigned to light duty by the Police Department, and in the summer of 1939 he went to Ireland, where he was born, to live with his brother. He returned to Chicago in 1946. Plaintiff says that the long sojourn in Ireland was due to his inability to get transportation facilities because of the war.

At the time of the hearing before respondent Board plaintiff was employed as a crossing guard by the Chicago Transit Authority. The Board found that there is no causal connection between the injury suffered by plaintiff on April 15, 1938 and his present disability.

 In a certiorari proceeding the rule has been repeatedly announced that a reviewing court has no power to reweigh the evidence. (*Byrnes v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago,* 339 Ill. App. 55.) In *Dresner v. Civil Service Commission,* 398 Ill. 219, at p. 227, the court said: "While the Administrative Review Act does not pur-

port to give a reviewing court the right to reweigh the evidence in the cause appealed from, still the courts have the power, as indicated by the decisions herein cited under other administrative acts, to consider the record to determine if the findings of the administrative agency are borne out by the evidence in the cause and whether or not the findings are against the manifest weight of the evidence or if there is substantial evidence in the record to support the findings.'' In *Van Ort v. Board of Trustees of Policemen's Pension Fund of Village of Summit,* 337 Ill. App. 489, this court held that the judgment of the Board may not be arbitrarily set aside, and that it can only be quashed where there is no evidence fairly tending to sustain the Board's action. To the same effect see *Byrnes v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago,* 339 Ill. App. 55, and *Carroll v. Houston,* 341 Ill. 531.

Plaintiff insists that the record conclusively shows that the findings of defendant Board were based on speculation and inference and not upon competent evidence fairly tending to sustain them. The trial court, as shown by the record, rested its decision on the ground that the Board ''did not base its conclusion on one set of facts as against a conflicting set of facts, but ignored admitted facts and based its conclusion on conjecture.''

██ More than eleven years elapsed between the time of the accident which caused the injuries complained of by plaintiff and the hearing before defendant Board. In the meantime the encephalogram of petitioner's head taken by Dr. Gonda had been destroyed and Dr. Steible had died. There is a sharp conflict between the reports of the Alexian Brothers Hospital and those of Dr. Steible which appeared in the police files. It should be noted that the first report, dated April 16, 1938, by Dr. Steible states that plaintiff had

a head contusion. It does not indicate what part of the head of plaintiff was contused. This report also shows contusions on the right side of plaintiff's chest. The report of Alexian Brothers Hospital, covering the same period of time, does not show any contusions on plaintiff's head, nor that any complaints were made by plaintiff of any head injuries. Moreover, the report of Alexian Brothers Hospital shows that an X-ray disclosed that the skull was normal. Dr. Steible's second report, dated May 17, shows contusions on both sides of the chest, with probable tearing of the intercostal muscles. The only injury shown by Alexian Brothers Hospital reports was a bruise on the left side of the chest which apparently resulted from an impact not of sufficient force to fracture the ribs. Because of the absence of any reference in the records of Alexian Brothers Hospital to a contusion of the head and the right side of the chest of plaintiff the defendant Board in weighing the evidence could reject the report of Dr. Steible on the ground that it was not an accurate account of plaintiff's physical condition.

 As to the testimony of doctors Gonda and Voris, the record discloses that both of them have attained eminence in the field of neurology. Their testimony is subject to the same tests that are applied to the evidence of other witnesses, and the weight to be given their opinions as experts presented a question for the defendant Board acting as a quasi-judicial body to determine. See *Eddy v. The People*, 218 Ill. 611.

Plaintiff relies strongly on the recent case of *O'Brien v. Retirement Board of Firemen's Annuity & Benefit Fund of City of Chicago*, 343 Ill. App. 630, General Number 45344, filed in the First Division of this court June 18, 1951. We think the facts in that case are readily distinguishable from those in this case. There the widow of a fireman filed her application for com-

pensation annuity on the ground that her husband's death resulted from the performance of an act of duty. The deceased had responded to an alarm of fire at a match factory and was overcome by sulphur fumes inhaled at the fire. The question presented was whether there was a causal connection between the inhalation of fumes at a fire of December 1946 and the death of the deceased in October 1947. Three medical experts testified that there was a causal connection between the inhalation of fumes at the fire and the deceased's death. The countervailing evidence consisted of an unsworn statement of one physician and the uncertain testimony of another. This court concluded that the incompetent and speculative evidence of the latter witnesses had no probative value and therefore could not be considered as evidence reasonably tending to support the decision of the Board.

■ From an examination of the record in the present case we think there is substantial evidence which reasonably tends to sustain the decision of the defendant Board.

For the reasons stated, the judgment is reversed.

*Judgment reversed.*

KILEY, P. J. and FEINBERG, J., concur.