**Aleen B. Ragen, Plaintiff-Appellant, v. Violet Bidwill Wolfner, Defendant-Appellee.**

**Gen. No. 48,468.**

First District, First Division.

September 9, 1963.

Charles E. Pope, of Chicago, for appellant.

Nash, Ahern and McNally, of Chicago (Thomas D. Nash, Jr., of counsel), for appellee.

MR. PRESIDING JUSTICE ENGLISH delivered the opinion of the court.

Plaintiff's complaint sought recovery on 13 promissory notes executed by defendant * in the total amount of $112,956.25, including $32,456.25 for interest. Defendant answered, admitted execution of the notes, but denying that plaintiff was the legal owner and holder thereof. The answer also alleged that the notes had been paid in full and that plaintiff had come into their possession long after maturity. Depositions of the parties were taken and defendant filed a motion for summary judgment supported by affidavits and by the depositions. Counter-affidavits were also filed. The

---

* See Callaghan's Illinois Digest, same topic and section number.

trial court allowed the motion and entered judgment for defendant. Subsequently plaintiff filed a motion to vacate the judgment and his motion was denied. Plaintiff appeals from both orders.

The origin of the notes in question is not in dispute. It appears that on November 28, 1942 defendant purchased from James M. Ragan, Jr. (then the husband of plaintiff) his 25% interest in Indiana National Publishing Co., a partnership (later known as Central Illinois Printing Co.) for a total consideration of $125,000 evidenced by 21 notes, including the 13 which are the subject of the complaint in this suit.* By their terms, these notes in varying amounts became due over a period of time, the last maturity being December 1, 1947.

The unverified complaint filed February 23, 1954 alleges that plaintiff is the legal owner and holder of the notes, and that they have not been paid. The only support to be found for these two conclusions is in the deposition of plaintiff and in her counter-affidavit filed to defendant's motion for summary judgment. In those documents she explained that the notes had come into her possession after she and her husband were divorced on July 3, 1952; that the notes had been in the apartment they had occupied in Chicago prior to their separation; that under date of June 30, 1952 her husband had executed a property settlement agreement in which he listed all his assets and agreed that she was to have certain of these, together with any other property belonging to him which he had not listed; that the notes in question were not listed among his assets and they thus became her property when she later discovered them in the apartment.

In her deposition she also explained how she knew that defendant had failed to pay the notes, stating that

---

* The notes bore the identification A and numbers 1 through 20. Those sued on are numbered 5 and 9 through 20.

it was because her lawyers had filed this suit. She testified further that "when they (her own lawyers) told me that the notes had been paid, and I asked for proof, they could supply no adequate proof." She also testified that in 1949 her husband had told her that the notes "will always be good" and that "they should be held for interest" or words to that effect.

In support of defendant's motion for summary judgment, she filed plaintiff's deposition and her own, together with affidavits of defendant, James Ragen, Jr., and Lloyd Engebretsen. It is on the strength of these documents, when considered with plaintiff's affidavit, as set forth above, that we must determine whether there exists a genuine issue as to any material fact. If there is no such issue, then the summary judgment procedure was properly employed and we must, of course, affirm the trial court. (Ill Rev Stats, c 110, § 57(3); Supreme Court Rule 15.)

The deposition and affidavit of defendant described her purchase of the interest of Ragen, Jr., in the partnership; her delivery of the 21 notes to him; and his delivery of a bill of sale to her. The written purchase agreement and the new partnership agreement among defendant, her then husband Charles W. Bidwill, James M. Ragen, Sr., and his wife Virginia E. Ragen, were attached as exhibits. Defendant also stated flatly under oath that all the notes had been paid, and in support of that position swore to the recital of facts which follows. A series of checks drawn by defendant, by Central Illinois Printing Co., and by Bentley Murray Co. (a Bidwill family enterprise) and payable to James M. Ragen, Jr., were all endorsed "for deposit only to account of James M. Ragen, Jr.," and bore the deposit stamp of City National Bank & Trust Co., in which bank he had his account. Twenty-five hundred dollars in cash was also deposited in that account. Copies of all the checks and the deposit slip covering the cash de-

73

posit were attached as exhibits. The last check was dated September 23, 1947 and all checks were deposited on or about the dates they bore. The amounts paid by Central Illinois were deducted from defendant's partnership drawing account. The total of the amounts thus paid was sufficient to pay the notes in full, that being the purpose of the payments, and the manner thereof had been agreed upon by Ragen. The preparation of the checks, their deposit, etc., were handled by Lloyd Engebretsen who was in charge of the books and records for the partnership and for various other personal and business enterprises of defendant and her husband.

Defendant stated that she did not know why the notes sued upon had not been cancelled and returned to her, but she did know that demand for the return of the notes had been made as they were paid. The purchase of Ragen's partnership interest was the only transaction defendant ever had with him involving indebtedness on her part.

The affidavit of Lloyd Engebretsen corroborated that of defendant as to his business relations with the Bidwills, he having been in charge of the Bookkeeping Department of their companies since 1941. Defendant gave him a copy of her agreement of November 28, 1942 with Ragen, Jr., and under her direction he prepared a schedule of the payments to become due, and entered the payments on the schedule as they were made. A photostatic copy of this schedule was attached.

In his affidavit Engebretsen then told how he had personally prepared all the checks to the order of Ragen, Jr., had deposited them to the credit of his account in the City National Bank, and charged them against the partnership drawing account of defendant at Central Illinois Printing. He also described several minor extensions of time on a few of the notes, which

74

had been agreed to by Ragen. Engebretsen also stated that during the course of the payments (1942–1947) he had made frequent demands upon Ragen for the return of the notes, but they were never returned.

The affidavit of James M. Ragen, Jr., also described the sale by him of a 25% interest in the partnership, and his receipt from defendant of the 21 notes totalling $125,000 as consideration therefor. He stated that he placed the notes in a concealed shelf in the library of the apartment where he was then living with plaintiff as his wife; that thereafter, at the request of Engebretsen, he made several searches of the premises to find the notes but was unable to do so; that at the time of his last search for the notes, during the latter part of 1947, plaintiff told him they must have been thrown out; that he accepted this explanation and searched no further.

Ragen's affidavit confirmed the statements of defendant and Engebretsen as to the manner of payment of the notes, and he verified that all notes were paid in full, leaving no debt due to him from defendant. Attached as exhibits to Ragen's affidavit were photostatic copies of his income tax returns for the years 1942 through 1947 in which he acknowledged receipt of the payments from defendant and paid taxes thereon as a capital gain. His returns for the years 1940 to 1946 were audited by the Internal Revenue Bureau.

In his affidavit Ragen also swore that he never endorsed, sold, transferred, negotiated, assigned or gave the notes to anyone.

■ Plaintiff contends that on this record summary judgment was improper because her possession of the uncancelled notes raises a presumption of nonpayment, and, thus, a question of fact, citing Witner v. Zeman, 30 Ill App 195, 198. It is our conclusion, and apparently that of the trial court, that the presumption of nonpayment was completely overcome by the

specific facts concerning payment as set forth in the defense affidavits. In our opinion, therefore, it cannot be said to present a "genuine issue" of material fact. Further, the unverified allegation of default contained in the complaint, coupled with the conclusions or speculations embodied in plaintiff's affidavit, are also insufficient to raise a genuine issue as against the uncontradicted evidentiary matter contained in the defense affidavits. (Porter v. Miller, 24 Ill App2d 424, 430, 164 NE2d 601.)

█ It is also argued by plaintiff that defendant's affidavits were technically insufficient because they did not meet the requirement of Supreme Court Rule 15(1) that such an affidavit "shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Plaintiff would have us interpret this rule to require that each affidavit include an express statement of the affiant to the effect that, if called as a witness, he could competently testify to the matters set forth in his affidavit. We cannot so interpret the rule, as we believe that it is fully satisfied by affidavits, such as those in this case, in which it affirmatively appears from the whole of the documents that the affiants would be competent witnesses, if called.

█ Plaintiff further complains of a failure to comply with the rule in that the exhibits attached to the affidavits were not sworn or certified copies. It is true that the exhibits were not separately sworn to as true copies of their originals, but the references thereto in the text of the affidavits were such as to render the exhibits verified copies in each instance. (Wainscott v. Penikoff, 287 Ill App 78, 82, 4 NE2d 511.)

█ Plaintiff's last contention is that the trial court should have vacated the judgment on plaintiff's motion of January 26, 1961, and ordered the taking of Ragen's deposition. It should be noted that the com-

plaint was filed in 1954, defendant's motion for summary judgment was filed on September 19, 1960 and allowed on December 28, 1960. During all that time plaintiff made no attempt to take Ragen's deposition. His affidavit of July 22, 1960 indicated that he was in Switzerland, but the record also indicates that in January, 1961 his whereabouts were unknown to either party.

On oral argument in this court plaintiff's attorney conceded that the court would have been powerless to order Ragen's deposition under the circumstances, but suggested that the cause should, therefore, have been continued until the taking of his deposition by plaintiff could have been accomplished.

Supreme Court Rule 15(2) contemplates a discretionary continuance for the purpose of taking depositions, but only when the moving party shows by affidavit "what affiant believes (the witness) would testify to if sworn, with his reasons for his belief." No such showing was made by plaintiff. This, together with its untimeliness, was sufficient to justify the court's exercise of its discretion in denying plaintiff's motion.

For these and other reasons which we believe do not warrant discussion, the orders of the Superior Court are affirmed.

Affirmed.

BURMAN and MURPHY, JJ, concur.