ANITA DAVIS, Plaintiff-Appellee, *v.* RETIREMENT BOARD OF THE POLICE-MAN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, Defendant-Appellant.

(No. 54710;

First District—February 28, 1972.

Richard L. Curry, Corporation Counsel, of Chicago, (Marvin E. Aspen and Howard C. Goldman, Assistant Corporation Counsels, of counsel,) for appellant.

Block, Levy & Becker, of Chicago, (Alvin R. Becker, of counsel,) for appellee.

Mr. JUSTICE BURKE delivered the opinion of the court:

A petition pursuant to section 72 of the Civil Practice Act was filed by defendant Retirement Board of the Policeman's Annuity and Benefit Fund of the City of Chicago (hereinafter "Retirement Board") requesting vacation of an order entered by the circuit court which remanded a determination of the Retirement Board disallowing a claim filed by plaintiff Anita Davis for an annuity benefit as the widow of a deceased Chicago police officer, and further requesting remandment of the cause to the Retirement Board for the taking of additional evidence. The trial court denied the relief requested in the Section 72 petition and allowed the relief requested in a petition theretofore filed by plaintiff to compel payment of the annuity. Defendant appeals, contending that the trial court erred in denying its Section 72 petition.

On December 14, 1968, Chicago Police Officer Fredrick E. Davis received several gunshot wounds causing his death. His widow, the plaintiff, made application to the Retirement Board for certain annuities on her and her minor children's behalf. After a hearing held on February 20 and March 20, 1969, the Retirement Board awarded a widow's annuity and a child's annuity, but denied plaintiff's application for a compensation annuity benefit on the ground that Officer Davis was not killed under circumstances involving an act of duty as defined by the Illinois Pension Code. See Ill. Rev. Stat. 1969, ch. 108½, par. 5—113.

At the hearing before the Retirement Board, plaintiff testified that on December 14, 1968, she resided with her husband (the deceased) and their two sons in the first floor apartment of a building located at 8118 South May Street in Chicago. She testified that her husband was a City of Chicago police officer and that he was not assigned to duty on December 14th because he had taken an examination for police sergeant on that day. The witness testified that at about 8:00 P.M. that day Miss Joyce White, age sixteen, who lived in an apartment in the basement of the same building and who was not related to the Davis family, came to the Davis apartment and complained to Officer Davis that a man named Steve Robbins raped her earlier that day and had taken money from her. Mrs. Davis testified that the officer had been in bed when Miss White arrived, that he arose and dressed himself in street clothes, and that he went to his automobile to look in "his big blue book to see what charges he could arrest Robbins on."

A while thereafter, someone came to the Davis apartment and informed those present that Robbins had arrived at the building and that he was in the basement apartment. Officer Davis took his gun and accompanied Miss White to the basement apartment. The witness testified that she next heard gunshots, that she proceeded downstairs, and that

she observed Robbins run out of the basement with a gun in his hand.

Joyce White testified at the hearing that on December 14, 1968, she accompanied Steve Robbins to his home, where Robbins forced her into a bedroom, threatened to tear off her clothing if she did not disrobe, and engaged in an act of sexual intercourse with her. Robbins then took all the witness' money, except for thirty-five cents which he left for bus fare. She left the Robbins home and contacted a person named Ronny Cox, to whom she related the incident with Robbins. Cox advised the witness to tell her family what had taken place before informing the police. Miss White testified that she was then driven home by her cousin, Jean Miller. The witness was then advised to relate her story to Officer Davis, who resided in the same building.

Miss White further testified that she went to the Davis apartment and that she related her story to the officer. She stated that Davis was dressed in citizen's attire. She testified that Officer Davis told her to telephone Robbins because the officer wanted to hear Robbins' side of the story. The witness stated that she tried to contact Robbins on the telephone in the Davis apartment, that he was not available, and that she was later called to a telephone on the second floor of the building because Robbins wished to speak to her. Some time later someone from the basement apartment informed the witness and Officer Davis that Robbins was in the basement apartment, and the witness and Davis went to that apartment. Miss White testified that when Davis and Robbins were about three feet from each other in the basement apartment, the officer asked Robbins "what he had done" to Miss White, and that Robbins drew a handgun and fired several shots at the officer. The witness testified that she hid in a closet during the shooting.

Miss White further testified that Officer Davis did not leave his apartment during the time the witness was there waiting for Robbins, nor did he obtain any kind of book to examine.

Amelia Byers testified at the hearing before the Retirement Board that she was in the basement apartment when Robbins entered, and that Robbins was later followed by Officer Davis and Miss White. She stated that Davis asked Robbins what he did to Miss White, and that Robbins backed away, pulled out a gun and shot Davis.

Jean Miller testified at the hearing that she was in the washroom of the basement apartment at the time, that she heard Davis ask Robbins what he did to Miss White, and that she then heard gunshots.

Police Officer Carl Dorsey testified at the hearing that he responded to a radio dispatch on the day in question, that he proceeded to the building at 8118 South May Street, and that he found Mrs. Davis in front of the building screaming that her husband had been shot. Several

women in the basement told the officer that "there had been a disturbance in the basement between the niece of Davis and Robbins."

Police Officer Bierne testified at the hearing that Mrs. Byers told him that she heard words exchanged between Robbins and Davis and she she then heard shooting. The officer further testified that Miss Jacqueline Miller told him that Officer Davis struck Robbins prior to the shooting.

Jacqueline Miller testified at the hearing before the Retirement Board that she was in the basement apartment at the time Robbins, Officer Davis and Miss White were there. The witness testified that Davis asked Robbins what he did to Miss White and that Robbins drew a gun, fired at Davis and then fled. The witness admitted that she gave a statement to Police Officer Joseph Gonzalas, which was reduced to writing and which the witness read and signed, relating that Davis and Robbins quarreled and that Davis slapped Robbins prior to the shooting. At the hearing the witness stated that the statement given to the officer concerning the slap was in error and that she was confused at the time she made the statement.

Officer Gonzales testified at the hearing concerning the statement given to him by Jacqueline Miller, which included a recital that Officer Davis slapped or pushed Robbins prior to the shooting.

Police Officer Odell Clark testified at the hearing that he took statements from both Joyce White and Amelia Byers. The officer stated that Miss White told him that she informed Officer Davis of the incident with Robbins, that Davis told her to telephone Robbins, and that when Robbins arrived at the apartment building, Davis went to the basement apartment to confront him. Officer Clark testified that Miss White told him that Davis asked Robbins what he did to Miss White, and that Robbins drew a gun and fired at Davis. The officer related that Miss White told him that she then hid in a closet, and that when the shooting was over she emerged from the closet and saw Davis on the floor, bleeding.

After the ruling made by the Retirement Board disallowing plaintiff's claim for the annuity benefit, plaintiff instituted an action in the circuit court under the Administrative Review Act to review the determination of the Board. On September 10, 1969, the circuit court found that Officer Davis was killed while in the performance of duty within the statute and that the findings of the Retirement Board were against the manifest weight of the evidence. The court thereupon entered an order remanding the cause to the Retirement Board with directions to enter a benefit annuity in favor of the plaintiff. No appeal was taken from that order.

On December 5, 1969, the instant Section 72 petition was filed, seeking the vacation of the September 10th order, the petition alleging that on October 30, 1969, at the criminal trial of Robbins for the shooting

of Officer Davis, it was learned that the eyewitnesses to the shooting perjured themselves at the hearing before the Retirement Board. The perjury allegedly related to the question of whether Officer Davis did or did not slap, or push, Robbins prior to the shooting. The petition further alleged that it appeared that Miss White was releated to Officer Davis, and that the perjured testimony was material to the issue before the Retirement Board of whether Officer Davis was acting in the line of duty, or for personal reasons, when he confronted Robbins.

It appears from the transcript of proceedings at the criminal trial of Steve Robbins for the shooting of Officer Davis that Miss White stated that she was told by Mrs. Byers to withhold the fact that Davis struck Robbins prior to the shooting, so as not to jeopardize plaintiff's receipt of the annuity benefit, and that in fact Officer Davis struck Robbins prior to the shooting. It further appears from the transcript that Miss White also stated that Mrs. Byers told her to "get the point across that we weren't any relation to him  *  *  *  and the family." The witness did not explain or expand upon that remark.

The trial court denied the relief requested in the Section 72 petition from which defendant prosecutes this appeal.

(At the outset it should be noted that plaintiff argues in her brief that the circuit court has no authority to hear new or additional evidence and that the circuit court further is without authority to remand the cause to the administrative agency after the court's judgment has become final, citing Ill. Rev. Stat. 1969, ch. 110, pars. 274, 275(1)(g). See generally *Schuman v. Department of Revenue*, 38 Ill.2d 571.)

■■ A petition filed under Section 72 of the Civil Practice Act is addressed to the sound discretion of the trial ciurt, and a court of review will not interfere with the trial court's disposition of the petition unless there is a clear abuse of that discretion. (*Suarez v. Yellow Cab Co.*, 112 Ill.App.2d 390.) Where the petition seeks relief based upon alleged perjured testimony, it must be shown by clear, convincing and satisfactory evidence that the testimony was not only false, but that it was wilfully and purposely falsely given. It must be further shown that it was material to the issue tried, and not merely cumulative, but that it probably would have controlled the result. *People v. Lewis*, 22 Ill.2d 68, 71; *People v. DeMario*, 112 Ill.App.2d 420.

■■ Whether Officer Davis slapped or pushed Robbins prior to the shooting and whether there was a family relationship between Davis and Miss White have no substantial bearing on the question of whether he was acting in the line of duty when he was shot. If in fact the officer did not strike Robbins, the question is moot. If the officer did in fact strike Robbins, that would merely show that he was possibly acting with

undue force in carrying out his duties as a police officer at the time. As far as evidence of a family relationship between Officer Davis and Miss White is concerned, Miss White was told by the people in the basement apartment after she related the Robbins incident, to speak to Davis about the matter because he was a police officer. Any family relationship between Davis and Miss White was consequently immaterial.

Further, it should be noted that the Retirement Board had evidence of the possibility of the striking and the family relationship at the time of the original hearing on plaintiff's applicaton. Although recanted at that hearing, the statement given by Jacqueline Miller to Officer Gonzales recited that Officer Davis struck Robbins prior to the shooting. Officer Bierne also testified that he was told by Miss Miller that Davis struck Robbins. As to the question of the family relationship, Officer Dorsey testified at the hearing that the women in the basement told him after the shooting that there had been a "disturbance in the basement between the niece of Davis and Robbins." Miss White, when asked at the hearing if she was related to Officer Davis, replied, "No, I'm related to Mrs. Gladys Miller and he was her son-in-law or something like that. The relationship was by a former marriage but he was no relation to me. I really don't understand it." The evidence was available to the Board at the time of the hearing, as well as to the court during the proceeding under the Administrative Review Act, and consequently a petition for relief pursuant to section 72 of the Civil Practice Act will not lie. See *Schuman v. Department of Revenue*, 38 Ill.2d 571.

The cases cited by defendant are distinguishable on their facts from the case at bar: *Byrnes v. Retirement Board*, 339 Ill.App. 55; *Columbia Quarry Co. v. Revenue Dept.* 34 Ill.2d 46. The case of *People v. Lewis*, 22 Ill.2d 68, supports plaintiff's, not defendant's position.

Under all the circumstances of this case the trial court properly denied defendant's petition for relief under section 72 of the Civil Practice Act. For these reasons the order is affirmed.

Order affirmed.

GOLDBERG, P. J., and LYONS, J., concur.