JACOB MEUDT, Plaintiff-Appellee, *v.* THE TRAVELERS INSURANCE COMPANY, Defendant-Appellant.

First District (5th Division)    Nos. 76-895, 77-324 cons.

Opinion filed January 13, 1978.

Lev and Sneckenberg, of Chicago, for appellant.

Block, Levy & Becker, Chartered, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

These two causes have been consolidated. In 76-895, defendant appeals from the denial of its motion to vacate an order granting summary judgment in favor of plaintiff, and in 77-324, it appeals the denial of its section 72 petition (Ill. Rev. Stat. 1975, ch. 110, par. 72). The following issues have been presented for our consideration: (1) whether the trial court erred in denying defendant's Rule 191(b) motion to stay the proceedings until certain evidence was obtained; (2) whether the trial court erred in refusing to consider an affidavit attached to its motion to vacate the summary judgment; (3) whether the trial court erred in denying its motion to vacate; and (4) whether the trial court erred in denying its section 72 petition.

Effective June 26, 1974, defendant insured certain contractor's

equipment belonging to plaintiff. On December 23, 1974, after a report of a loss from plaintiff's agent, a claim representative of defendant (Jeff Bruce) was assigned to the claim. Bruce contacted plaintiff's wife and, upon being informed that some equipment had been taken from plaintiff's truck when it was stolen, he requested an itemized list of the loss. On December 30, 1974, plaintiff supplied Bruce with a police report concerning the theft of his truck and with the requested list of equipment claimed to have been stolen. After Bruce compared the list with a schedule of equipment attached to the policy, he asked for further substantiation of the value of the lost property and, on January 20, 1975, plaintiff supplied Bruce with receipts and cancelled checks concerning the purchase of each item of lost equipment. Bruce and plaintiff then reviewed each item in detail to ascertain an overall value of the loss, and on January 29, 1975, Bruce reported to his superiors as follows:

"I believe Mr. Meudt, has been helpful in this case and has been above suspicion regarding false or fraulent [sic] claim. I therefore, recommend payment of $18,016 to the insured upon approval from my superior."

The next day a draft in that amount was issued by defendant to plaintiff in payment of his loss.

Thereafter, on February 3, 1975, Bruce's superior received a phone call from someone who identified himself as Mr. Farrone and said he was an investigator for the Auto Theft Division of an unspecified law enforcement agency. Farrone indicated that Meudt was under some form of investigation; that he had spent some time in prison for mail fraud; and that he had a record of filing insurance claims. Bruce and his superior then decided to stop payment on the draft issued to plaintiff and to make an additional investigation. Bruce thereafter made inquiries and turned the compiled data over to defendant's attorney.

Plaintiff subsequently sued to enforce the settlement agreement and, while defendant did not deny the existence of the agreement, he raised two affirmative defenses; i.e., the agreement was induced by fraudulent representations of plaintiff; and that plaintiff violated the policy's false swearing provision.

On January 16, 1976, plaintiff moved for summary judgment and attached Bruce's discovery deposition which formed the basis of the above statement of facts. On the same day, defendant was ordered to respond to the motion within 28 days, and a hearing was set for March 12, 1976. By stipulation of the parties, defendant was given an additional 14 days to respond but did not do so, and when it did not appear for the March 12 hearing, summary judgment was entered in favor of plaintiff in the amount of $18,016 plus 5% interest from February 1, 1975.

On April 2, 1976, the trial court allowed defendant to file its response

to the motion for summary judgment and set defendant's motion to vacate the summary judgment for hearing on April 14. To its response, defendant attached portions of plaintiff's answers to an interrogation (allegedly under oath), the unsworn answers to questions propounded to a gasoline station attendant, the records of plaintiff's two prior criminal convictions and an affidavit of an attorney who represented another insurance company.

It appears from his answers that early one morning in December 1974, plaintiff brought his truck to a certain gasoline station for the repair or replacement of the starter; that he informed the attendant of contractor's equipment in the plywood shelter built on the flat bed of the truck; that he paid the attendant in advance and, having an extra key, he told the attendant to remove the key in the truck and to place it on top of the carburetor underneath the truck's hood or to take the key into the station; that plaintiff told the attendant to do this so he could pick up the truck either during or after business hours; that at 10:30 p.m., when plaintiff returned to the station, the truck was gone and he reported its disappearance to the police; that the following morning, the attendant told plaintiff that the key had been left on the carburetor per instructions; that when the truck was recovered, plaintiff found the key in that location, but the equipment was missing; that the lock on the vent window had been broken; and that the police had reported the truck had been "hot wired."

The answers given by the station attendant, Brazeau, conflicted with those of plaintiff in the following respects: (1) plaintiff did not tell Brazeau that the equipment was on the truck until he announced that the truck had been recovered; (2) plaintiff had not told Brazeau to leave the key on the carburetor and he had, in fact, locked it in the station at the close of the business day; and (3) plaintiff had paid in advance for the repairs on the day previous to bringing the truck in.

Records of the United States District Court, also attached to the motion to vacate, revealed that plaintiff had been found guilty of mail fraud (which in some manner involved insurance) on May 31, 1972, and of concealing a motor vehicle stolen in interstate commerce on December 7, 1972.

Finally, there was attached the affidavit of John E. Wilson, an attorney representing Omaha Indemnity Company, stating that on January 18, 1975, a judgment for $3,000 was rendered against plaintiff in favor of Omaha which required the return of funds paid to plaintiff on a fraudulent insurance claim.

On May 6, 1976, defendant filed a Rule 191(b) (Ill. Rev. Stat. 1975, ch. 110A, par. 191(b)) motion, which was denied by the trial court, requesting a stay in the proceedings until the deposition of Officer Bagnole could be

obtained and in order to find the attendant, Brazeau. Affidavits of defendant's attorney and of Bruce were attached to the motion with the former, stating that since December, 1975, he had telephoned the station four or five times to ascertain the whereabouts of Brazeau, who had terminated his employment there in October, 1975, and that within one week prior to filing the affidavit, the station owner had agreed to obtain information as to Brazeau's whereabouts from a frequent customer who knew Brazeau. Bruce's affidavit stated that at the beginning of March, 1976, he visited the gasoline station and was told that Brazeau had quit six months before; that on March 22, following up on a tip, he went to the "Y Not" bar in search of one Alex Pappas, who was reputed to know of Brazeau's whereabouts, but Pappas was not there; that on March 30, during the course of an hour and a half canvass of the neighborhood, he was referred to a man named Pete, who promised to have Brazeau phone Bruce, but Brazeau did not call; that on April 22, Bruce asked the station owner to have Pete phone him; and that thereafter a detective agency was hired to find Brazeau.

The hearing on the motion to vacate was continued to May 18, 1976, and on that date defendant attempted to file the affidavit of Officer Bagnole, which stated in pertinent part:

"I picked up the hoold [sic] of the truck which was red in color and looked beneath the hood at the time of recovery.

I found no key or key attached to a leather holder when I opened the hood and looked under it."

On the same day, the trial court denied the motion to file Bagnole's affidavit instanter and also denied the motion to vacate the order granting summary judgment. This court allowed defendant to file a late notice of appeal concerning such order under Supreme Court Rule 303(e). Ill. Rev. Stat. 1975, ch. 110A, par. 303(e).

In regard to cause 77-324, it appears that on September 1, 1976, defendant filed a section 72 petition, which included an affidavit of its attorney stating that he had finally found Brazeau, whose affidavit was attached in which Brazeau verified the interrogational responses mentioned above and also stated:

"I returned the key to Mr. Meudt's truck to him personally when he returned for the truck.

I had occasion to drive the truck five feet or thereabouts during the period I worked on it and I heard no rattles from the rear plywood enclosure. Also the truck operated in second gear without difficulty which from my three years of truck driving experience would not have occurred if any heavy load were in it (300 pounds or so)."

In his answer to the section 72 petition, plaintiff denied due diligence had

been exercised by defendant and alleged certain affirmative defenses. Cause 77-324 involves defendant's appeal from the denial of this petition.

OPINION

I.

In cause 76-895, defendant first contends that the trial court abused its discretion in denying its motion under Supreme Court Rule 191(b) to stay the proceedings. It posits that it had exercised due diligence in locating Brazeau and that his verified statements supported a vacation of the summary judgment.

Rule 191(b) provides:

"If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure by reason of hostility or otherwise, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing papers or documents in the possession of those persons or furnishing sworn copies thereof. The interrogatories and sworn answers thereto, depositions so taken, and sworn copies of papers and documents so furnished, shall be considered with the affidavits in passing upon the motion." (Ill. Rev. Stat. 1975, ch. 110A, par. 191(b).)

Rule 191(b) is the successor, without substantive change, of former Rule 15 (Ill. Ann. Stat., ch. 110A, par. 191, Committee Comments, at 96 (Smith-Hurd 1968)), which rule viewed such a motion as addressed to the sound discretion of the trial court and contemplated a showing through affidavit regarding what the witness would testify to, if sworn. *Ragen v. Wolfner* (1963), 43 Ill. App. 2d 70, 192 N.E.2d 560.

■■ Here, the affidavit referred only to Brazeau's unsworn interrogation which, as we view it, reveals no responses probative of the affirmative defense of fraud. There were, however, responses which defendant argues come within the "false swearing" policy provision, which is as follows:

"This entire policy shall be void if whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject

thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

Initially, we note some indication that an enforceable settlement agreement forecloses policy defenses (*Dan Hayes Boiler & Repair Co. v. Illinois Masonic Medical Center* (1975), 30 Ill. App. 3d 616, 332 N.E.2d 463); but, even assuming the viability of the false swearing defense, we believe defendant has failed to raise a genuine issue of material fact as to it. Defendant excerpted eight pages of plaintiff's responses to an interrogation, but the record is devoid of any evidence that these responses were given under oath. No affidavit appears in the record, either from the person who may have administered an oath to plaintiff or from a bystander who may have heard the oath given. Absent any record that plaintiff had answered under oath, it is our belief that even if Brazeau had been located and his responses were verified, a question of material fact would not be raised concerning false swearing by plaintiff, as it is not established in the record that he made responses under oath which conflicted with those of Brazeau's. Accordingly, we cannot say that the trial court abused its discretion in denying defendant's Rule 191(b) motion.

■■ Defendant next contends that the trial court erred in refusing to allow it to file Officer Bagnole's affidavit and to consider such affidavit. It is within the discretion of the trial court to consider affidavits filed pursuant to a motion to vacate a summary judgment. (*Des Plaines Motor Sales, Inc. v. Whetzal* (1965), 58 Ill. App. 2d 143, 206 N.E.2d 806.) It appears to us that Bagnole's affidavit has little, if any, value to defendant, as it fails either by date, by location, by license number, by serial number, by detailed description, or by any other means to connect the red truck to plaintiff. Consequently, we cannot view the trial court's refusal to consider this affidavit as an abuse of discretion.

■■ Defendant next contends tht the trial court erred in denying its motion to vacate the summary judgment. Plaintiff sued defendant for breach of their settlement agreement. Defendant does not deny the existence or the breach of the agreement; but, instead, it relies on the affirmative defenses of fraud and violation of the policy's false swearing provision to create genuine questions of material fact concerning his duty to perform.

"The rule is that transactions are presumed to be fair and honest until the contrary is proved by clear and convincing evidence [citation] although it is not required that fraud be established by direct and positive proof. Any conduct capable of being turned into a statement of fact is a representation. It is sufficient if the proof shows acts such as to mislead a reasonably cautious and prudent man in regard to existence of a fact forming a basis of or

contributing to an inducement to some change of position by him. [Citation.] Fraud is not presumed but must be proved like any other fact by clear and convincing evidence. [Citations.] It is not sufficient that there be mere suspicion of fraud but fraud, if it exists, must be satisfactorily shown. [Citation.]" *Racine Fuel Co. v. Rawlins* (1941), 377 Ill. 375, 379-80, 36 N.E.2d 710, 712-13.

Here, as noted above, nothing in Brazeau's statement would indicate the insurance claim was fraudulent, and the interrogation responses of plaintiff were not shown to have been made under oath. In view thereof, it appears to us that the record indicates only the suspicion of fraud based upon the sketchy details of two criminal convictions and the loss of a suit to another insurance company, which was predicated on allegations of fraud on the part of plaintiff. Defendant argues, nonetheless, that such evidence is substantive proof of an intent to defraud. However, we note that the intent to defraud of itself is insufficient where, as here, there is no evidence of any act on the part of plaintiff which misled defendant. (*Racine Fuel Co. v. Rawlins.*) Absent proof by defendant, direct or circumstantial, that no loss occurred, we cannot say that the trial court erred in denying defendant's motion to vacate its order granting summary judgment in favor of plaintiff. See *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.

## II.

Turning to cause 77-324, defendant's sole contention is that the trial court erred in denying its section 72 petition. Plaintiff, however, maintains that we are without jurisdiction to consider the merits of this appeal. We disagree.

■■ On June 9, 1976, defendant filed a motion "to vacate [the] rulings of May 18, 1976 and to reconsider all matters before the court on that date." Excepting section 72 petitions (Ill. Rev. Stat. 1975, ch. 110, par. 72) and the stipulation of all parties (*Krotke v. Chicago, R. I. & Pacific R.R. Co.* (1974), 26 Ill. App. 3d 493, 327 N.E.2d 212), a trial court does not have jurisdiction to reconsider its own orders beyond term time. *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 255 N.E.2d 900, *cert. denied* (1970), 400 U.S. 941, 27 L. Ed. 2d 244, 91 S. Ct. 232; *Goldstick v. Saporito* (1974), 22 Ill. App. 3d 621, 317 N.E.2d 774; *Werth Industries, Inc. v. Mid-America Management Co.* (1973), 16 Ill. App. 3d 688, 306 N.E.2d 510; *Martin v. Masini* (1967), 90 Ill. App. 2d 348, 232 N.E.2d 770; *In re Estate of Schwarz* (1965), 63 Ill. App. 2d 456, 212 N.E.2d 329; *Weaver v. Bolton* (1965), 61 Ill. App. 2d 98, 209 N.E.2d 5.

■■ As the trial court here had, on May 18, ruled upon the motion to vacate which had been filed within term time, it was without jurisdiction

to further reconsider its granting of summary judgment in favor of plaintiff unless, of course, the motion was in the nature of a section 72 petition. Plaintiff contends that the June 9 motion was, in effect, a section 72 petition, as it contained the same matters included in the section 72 petition subsequently filed; and that defendant's failure to appeal the denial of the June 9 petition deprives this court of jurisdiction to review the denial on November 17 of the later petition designated as being under section 72. (*Goldstick v. Soporito; Werth Industries, Inc. v. Mid-American Management Co.*) While we agree that such petitions are substantially identical, we find the question to be abstract as defendant also filed a timely notice of appeal contesting the order of July 15, which disposed of the June 9 motion. (*Harney v. Cahill* (1965), 57 Ill. App. 2d 1, 206 N.E.2d 500.) Since either the July 15 or November 17 order is reviewable as a denial of a section 72 petition (*Goldstick v. Saporito*), we believe that justice requires a review of the order in cause 77-324, which the parties and the trial court treated as a section 72 petition.

■ ■ ■ A section 72 petition must allege adequate grounds for relief and is not intended to relieve a party from the consequences of his own negligence. (*Carroll & Neiman, Inc. v. Silverman* (1975), 28 Ill. App. 3d 289, 328 N.E.2d 205.) Neither is such a petition a substitute for appeal nor a vehicle to relitigate that which had already been validly adjudicated. (*Lacey v. Lacey* (1974), 24 Ill. App. 3d 776, 321 N.E.2d 524.) It is incumbent upon petitioner to show that he has exercised due diligence (*Windmon v. Banks* (1975), 31 Ill. App. 3d 870, 335 N.E.2d 116) and that facts not appearing in the record which could not reasonably have been disclosed at or prior to the entry of the decree and which, if known to the court at that time, would have prevented its entry (*Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 309 N.E.2d 356). To the extent such a petition goes unchallenged by either a motion to strike or an answer, its allegations are to be taken as true (*Windmon v. Banks*) and, except where issues central to the petition are controverted, the trial court may rule without a hearing on the petition (see *McKinnon v. Yellow Cab Co.* (1975), 31 Ill. App. 3d 316, 333 N.E.2d 659). The petition is addressed to the sound discretion of the trial court and, absent abuse, its ruling will not be disturbed on review. *Davis v. Retirement Board* (1972), 4 Ill. App. 3d 221, 280 N.E.2d 735.

■ ■ As in its direct appeal, defendant also contends in this appeal that the matter contained in Bagnole's affidavit and Brazeau's verified interrogational responses raised questions of material fact. As these matters were considered in the direct appeal, they will not be re-considered in an appeal from the denial of the section 72 petition. (*Carroll & Neiman, Inc. v. Silverman.*) In effect, the only new matter advanced by the petition is that when Brazeau drove the truck five feet,

he did not hear the rattle of equipment and that, in his opinion, the truck would not have operated as it would have if laden with heavy equipment. Bruce initially interviewed Brazeau on February 4, 1975, and transmitted a copy of the interrogation to defendant's attorney. No questions concerning his operation of the truck were asked of Brazeau during that interview or subsequently by defendant's attorney, and defendant gives no explanation why they were not. While Brazeau quit his job in October 1975, eight months had intervened when he could have been questioned further at the station. During this same period, Bruce or the attorney could have requested Brazeau's home address or telephone number, or at least asked that they be informed should Brazeau ever leave his place of employment—which was defendant's only link to his whereabouts. Moreover, defendant filed his response to the motion for summary judgment 35 days after it was due to be filed, and it was only after this extended period that defendant intensified the search for Brazeau. Considering all the facts and circumstances, we do not believe that such conduct constitutes due diligence or that the evidence could not have been obtained prior to the entry of summary judgment. In view thereof, we do not believe the trial court abused its discretion in denying defendant's section 72 petition.

For the reasons stated, the judgment of the trial court in cause 76-895 and in cause 77-324 is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.