# Illinois Official Reports

## Appellate Court

---

**Kim v. State Farm Mutual Automobile Insurance Co., 2021 IL App (1st) 200135**

---

| | |
|---|---|
| Appellate Court Caption | PENNY KIM, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>No. 1-20-0135 |
| Filed | June 30, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-8655; the Hon. Caroline K. Moreland, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kent D. Sinson and Lisa K. Lange, of Sinson Law Group, of Chicago, for appellant.<br><br>Joseph A. Cancila Jr., James P. Gaughan, and Allison N. Siebeneck, of Riley Safer Holmes & Cancila LLP, of Chicago, for appellees. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Justices Reyes and Martin concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Penny Kim's amended complaint against defendants State Farm Mutual Automobile Insurance Company (State Farm Mutual) and State Farm Fire and Casualty Company (State Farm Fire) (collectively, State Farm) sought class certification for individuals with personal injury claims arising from motor vehicle collisions and damages from State Farm's alleged misrepresentations about or concealment of excess, or "umbrella," insurance policies. Kim also alleged against State Farm claims of insurance code violations, common law and statutory fraud, negligent misrepresentation, and attorney fees and costs.

¶ 2    The circuit court granted summary judgment in favor of State Farm and against Kim, (1) ruling that insurers were not required to disclose the existence of an umbrella insurance policy in response to a demand under the insurance statutory provision at issue and (2) denying Kim's motion for additional discovery.

¶ 3    On appeal, Kim argues that (1) the circuit court misapplied the statutory provision regarding the disclosure of insurance coverage, (2) she presented sufficient evidence in support of her claims of fraud and negligent misrepresentation to show that State Farm made actionable false representations and omissions to conceal its insured's policy limits, (3) she was entitled to attorney fees and costs based on State Farm's vexatious and unreasonable actions, and (4) she was entitled to discovery on all her claims and class issues.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                I. BACKGROUND

¶ 6    This case arises from a brief series of communications in May 2012 between State Farm and Kim's counsel, Kent Sinson, following an automobile accident involving Kim and State Farm's insured, Elizabeth Swann. At no time did State Farm communicate directly with Kim.

¶ 7    On May 9, 2012, four days before Kim filed her personal injury lawsuit against Swann, Sinson wrote to State Farm claim representative Connie O'Connor and made the following demand: "Pursuant to 215 ILCS 5/143.24(b), please disclose your insured's policy limits." O'Connor responded in May 2012, identifying Swann's bodily injury automobile coverage of $100,000 per person and $300,000 per accident. Upon receiving O'Connor's disclosure, Sinson contacted O'Connor and "confronted her," stating that he had a hard time believing that Swann would live in the wealthiest suburb in the Chicagoland area and not have an umbrella policy, the premium on which usually runs about $300-$400 per year.

¶ 8    On May 21, 2012, Sinson again wrote to O'Connor to clarify that when he originally asked for disclosure of Swann's policy limits, he meant to request disclosure of any policy potentially applicable to Swann's accident with Kim. On May 24, 2012, claim representative Marco Ruvalcaba sent sworn, written confirmation disclosing that Swann was insured under an umbrella policy with a $1 million limit for liability coverage. Ruvalcaba copied the law firm representing Swann in Kim's personal injury suit on this disclosure. Thus, within weeks of Kim filing her personal injury lawsuit against Swann and before Swann was required to

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

respond to the complaint, Kim knew the coverage limits for both Swann's auto policy and the umbrella policy.

¶ 9 Kim served Swann with interrogatories and production requests that demanded disclosure of, among other things, all insurance policies potentially applicable to the accident. Swann responded in August 2012 by disclosing her husband's auto policy but not her umbrella policy. Kim and her counsel knew this was incorrect, given State Farm's prior disclosure of the existence and limits of the umbrella policy. Sinson immediately moved for sanctions, identifying the existence of the umbrella policy and the incorrect nature of the interrogatory response.[2] Swann promptly corrected her answers within 30 days, on September 14, 2012, to include the umbrella policy.

¶ 10 In December 2012, Swann was deposed. She explained that when she originally answered Kim's interrogatories, she was aware of her umbrella policy but did not realize it was relevant to the personal injury case because she mistakenly believed it provided coverage only for "act of God kinds of things" related to her homeowners insurance. She also stated that she did not discuss her policy limits, coverages, or the existence of an umbrella policy with any State Farm personnel prior to answering the interrogatories. Swann's counsel also stated on the record that the error was his fault and he failed to list the umbrella policy in the initial discovery response.

¶ 11 In April 2013, Kim amended her complaint against Swann to add State Farm Mutual as a defendant and assert proposed class claims against it regarding the disclosure of the umbrella policy.

¶ 12 In June 2013, Kim made an initial settlement demand for the combined policy limits of $1.1 million. Swann produced copies of both her State Farm Mutual auto insurance policy and her State Farm Fire umbrella policy, with the relevant declaration pages, by September 2013. Kim voluntarily dismissed her personal injury suit against Swann in April 2017. In April 2018, Kim settled her bodily injury claims against Swann in exchange for payment of the combined coverage limits of $1.1 million, releasing all claims "without reliance upon any statement or representation of the released parties or her representatives."

¶ 13 State Farm Mutual moved to dismiss the claims against it, but the circuit court denied that motion on December 22, 2014. The court concluded that the issues raised in State Farm Mutual's motion could be "revisit[ed] *** on a summary judgment."

¶ 14 In March 2015, State Farm responded to Kim's interrogatories and requests for production. State Farm objected to Kim's discovery requests on the grounds that, among other things, they improperly sought class-wide, company-wide, and nationwide merits discovery on a range of topics either unlimited in timeframe or dating back to 1988. In May 2015, Kim's asserted class claims against State Farm Mutual were severed and transferred to the chancery division of the circuit court of Cook County. In September 2015, Kim filed a fourth amended complaint, which raised three claims against State Farm Mutual: count I for common law fraud, count II for violation of section 143.24b of the Illinois Insurance Code (215 ILCS 5/143.24b (West 2010)), and count III for violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2010)).

¶ 15 Shortly thereafter, Kim responded to State Farm's interrogatories. She did not answer when she became aware of Swann's umbrella policy, citing the attorney-client privilege. She also

---

[2]This motion was unresolved and rendered moot when Kim later voluntarily dismissed her suit against Swann in April 2017.

did not identify any action that she personally took based on a mistaken belief about the existence of the umbrella policy or quantify her alleged damages for emotional distress or the "time value of money." However, she admitted that her attorney's knowledge regarding the existence and limits of Swann's umbrella policy was properly imputed to her.

¶ 16    In November 2016, this case was stayed pending resolution of the appeal in Demarco v. CC Services, Inc., No. 14-CH-10416 (Cir. Ct. Cook County, May 12, 2015), which raised the same issue of whether a demand under section 143.24b of the Insurance Code requires the disclosure of any umbrella policy. The circuit court's dismissal order in Demarco was affirmed in an unpublished order on March 24, 2017. See *Demarco v. CC Services, Inc.*, 2017 IL App (1st) 152933-U. Though Kim was free to resume proceedings against State Farm at that time, she took no action for more than six months.

¶ 17    In December 2017, State Farm Mutual moved for summary judgment on all three counts of the fourth amended complaint. In response, Kim filed a motion under Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) for additional discovery. In May 2018, Kim requested leave to file a corrected fourth amended complaint, which contained two additional claims—count IV for negligent misrepresentation and count V for attorney fees and costs under section 155 of the Insurance Code (215 ILCS 5/155 (West 2010))—and added State Farm Fire as a defendant. State Farm Mutual opposed the motion and renewed its motion for summary judgment in July 2018. After extensive briefing, the court granted Kim's motion for leave, and Kim filed her corrected fourth amended complaint in November 2018. The court allowed State Farm leave to supplement its pending summary judgment motion to address these new claims, and State Farm did so in December 2018.

¶ 18    On June 5, 2019, the court denied Kim's Rule 191 motion for additional discovery. Thereafter, the court denied various pending motions for leave to submit overlength briefs and instructed the parties to re-brief the summary judgment motion in compliance with the page limits set by local rule. By October 2019, State Farm's summary judgment motion was fully briefed, and the matter was provisionally set for oral argument on January 8, 2020. On January 2, 2020, the court granted State Farm's motion for summary judgment on the papers. This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    Kim argues that State Farm was not entitled to summary judgment because (1) the circuit court misapplied the law regarding the disclosure of insurance coverage and (2) she presented sufficient evidence to support claims of fraud and negligent misrepresentation. She also argues that she was entitled to (3) attorney fees and costs under the Insurance Code and (4) discovery on all her claims and class issues.

¶ 21    A trial court's order granting summary judgment is reviewed *de novo*. *Seitz-Partridge v. Loyola University of Chicago*, 409 Ill. App. 3d 76, 82 (2011); see also *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 63 (under *de novo* review, the reviewing court performs the same analysis the trial court would perform). A defendant is entitled to summary judgment where the pleadings, depositions, admissions, and affidavits in the record—even when viewed in the light most favorable to the plaintiff—show that there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law. *Seitz-Partridge*, 409 Ill. App. 3d at 82; *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 228 (2007). If the plaintiff fails to establish triable fact issues as to her asserted claims,

the court must enter summary judgment in favor of the defendant. *Salerno v. Innovative Surveillance Technology, Inc.*, 402 Ill. App. 3d 490, 497 (2010).

¶ 22                              A. Disclosure of Insurance Coverage

¶ 23        Kim argues that State Farm violated section 143.24b of the Insurance Code by failing to disclose Swann's umbrella policy in response to Sinson's May 9, 2012, letter. Kim argues that the trial court misapplied the law and State Farm engaged in "judge shopping" to obtain a favorable outcome.

¶ 24        This claim presents a question of law—*i.e.*, whether section 143.24b of the Insurance Code requires disclosure of an umbrella policy as a "private personal passenger automobile liability insurance policy." We review *de novo* both questions of law and issues of statutory construction. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 127-28 (2005); *Best Buy Stores, L.P. v. Department of Revenue*, 2020 IL App (1st) 191680, ¶ 17. When construing a statute, the court attempts to ascertain and give effect to the intent of the legislature, which "is best determined from the plain and ordinary meaning of the language used in the statute." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 24. "When the statutory language is plain and unambiguous, we may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor may we add provisions not found in the law." *Id.* Only when a statute is ambiguous may a court look beyond its express language and rely on "extrinsic aids," such as legislative history. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶¶ 11, 13.

¶ 25        Section 143.24b provides:

> "Any insurer insuring any person or entity against damages arising out of a vehicular accident shall disclose the dollar amount of liability coverage *under the insured's personal private automobile liability insurance policy* upon receipt of the following: (a) a certified letter from a claimant or any attorney purporting to represent any claimant which requests such disclosure and (b) a brief description of the nature and extent of the injuries, accompanied by a statement of the amount of medical bills incurred to date and copies of medical records." (Emphasis added.) 215 ILCS 5/143.24b (West 2010).

¶ 26        State Farm argues that, as an initial matter, Kim's disclosure demand was deficient under the terms of the statute because it was not sent by certified mail, did not describe Kim's injuries, did not enclose medical records, and did not state the medical expenses that Kim had incurred for accident-related treatment. Nevertheless, State Farm contends that its disclosure provided to Kim's counsel satisfied the requirements of section 143.24b.

¶ 27        The plain and unambiguous language of section 143.24b requires disclosure of potentially available coverage under "personal private passenger automobile liability insurance polic[ies]." *Id.* Contrary to Kim's argument on appeal, the title of that section does not broadly refer to "liability coverage" but more narrowly refers to the "[d]isclosure of dollar amount of *automobile* liability coverage." (Emphasis added.) *Id.* It is well settled in Illinois that a personal automobile insurance policy is not the same as an umbrella policy. In *Hartbarger v. Country Mutual Insurance Co.*, 107 Ill. App. 3d 391, 394 (1982), the plaintiff argued that an umbrella policy was an automobile policy and thus was required to provide uninsured motorist coverage under the Insurance Code. This court rejected that position, holding that "an umbrella liability

- 5 -

policy is entirely different from an automobile policy." *Id.* at 396. This court quoted approvingly a decision from the Alabama Supreme Court, which stated:

> " 'Automobile liability policies and motor vehicle liability policies insure against the risk of loss through the operation of specific automobiles. An umbrella policy, on the other hand, is fundamentally excess insurance designed to protect against a catastrophic loss. Before an umbrella policy is issued, a primary policy (the "underlying policy") must be in existence ***. *** The umbrella policy issued by Trinity Universal is an inherently different type of insurance from an automobile or motor vehicle liability policy ***.' " *Id.* at 395 (quoting *Trinity Universal Insurance Co. v. Metzger*, 360 So. 2d 960, 962 (Ala. 1978)).

See also *Mei Pang v. Farmers Insurance Group*, 2014 IL App (1st) 123204, ¶ 11 ("[i]n Illinois, umbrella policies and primary auto policies are distinct" and an "umbrella policy does not provide the same type of coverage as an automobile policy"); 215 ILCS 5/143.13 (West 2010) (" '[p]olicy of automobile insurance' " defined separately from " '[a]ll other policies of personal lines' ").

¶ 28    Moreover, Kim's interpretation of section 143.24b has been rejected by courts interpreting the Illinois statute. In *Roppo v. Travelers Commercial Insurance Co.*, 869 F.3d 568, 595 (7th Cir. 2017), the Seventh Circuit affirmed the federal district court's dismissal of the same nondisclosure claim at issue here as baseless because umbrella policies are not automobile policies and section 143.24b could not reasonably be construed to encompass umbrella policies based on the plain language of the statute, which defined a "policy of automobile insurance" as distinct from other types of liability insurance.

¶ 29    Kim also argues that State Farm engaged in "judge shopping" to seek reconsideration of a prior circuit court judge's December 2014 ruling, which denied State Farm's motion to dismiss. The record, however, refutes this argument.

¶ 30    In 2014, this case was pending in the law division of the circuit court of Cook County and included both personal injury claims against State Farm's insured, Elizabeth Swann, and asserted class claims against State Farm Mutual. By March 2015, after the court had denied State Farm Mutual's motion to dismiss, the personal injury claim against Swann was nearly ready for trial, while discovery was only beginning with respect to Kim's class claims. Swann therefore moved to sever Kim's personal injury claim against her from the asserted class claims to allow the personal injury claim to proceed to trial. State Farm Mutual did not oppose that request. In the event the court granted the severance motion, State Farm Mutual asked that it transfer the severed class claims to the Chancery Division under General Order 1.2 of the Circuit Court of Cook County (Cook County Cir. Ct. G.O. 1.2 (Aug. 1, 1996)). The Law Division court granted both motions. State Farm did not ask the Chancery Division court to reconsider the December 2014 ruling on its motions to dismiss. Rather, the arguments in State Farm's denied motion to dismiss were properly revisited under the appropriate legal standard in the context of State Farm's motion for summary judgment.

¶ 31    We conclude that the circuit court properly granted summary judgment in favor of State Farm on Kim's claim, under section 143.24b of the Insurance Code, that State Farm failed to disclose Swann's insurance coverage.

¶ 32                                  B. Fraud and Negligent Misrepresentation

¶ 33                                   1. Common Law and Statutory Fraud

¶ 34        To prevail on a claim for fraudulent misrepresentation, a plaintiff must establish the following elements: (1) a false statement of material fact, (2) known or believed to be false by the person making it, (3) an intent to induce the plaintiff to act, (4) action by the plaintiff in justifiable reliance on the truth of the statement, and (5) damage to the plaintiff resulting from such reliance. *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 36. Similarly, a cause of action under the Consumer Fraud Act requires a plaintiff to demonstrate (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, and (3) the occurrence of the deception during a course of conduct involving trade or commerce. *Id.* (citing *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 62).

¶ 35        To demonstrate a triable claim for common law or statutory fraud, Kim must present evidence sufficient to support the inference that State Farm made a false or misleading statement or omission of material fact. See *id.* Before the circuit court, Kim asserted that the underlying act forming the basis for her fraud claims was State Farm's alleged failure to disclose the existence of the umbrella policy in the May 16, 2012, confirmation of coverage letter to Kim's attorney. Kim's common law and statutory fraud claims are tethered to her section 143.24b claim—which, as discussed above, does not as a matter of law require disclosure of excess umbrella insurance. Thus, Kim's fraud claims fail for the same reason.

¶ 36        On appeal, Kim argues that the alleged underlying misrepresentation by defendants includes the initial, incorrect interrogatory response provided by Swann. Kim contends that this is appropriate because an alleged misrepresentation must be evaluated based upon the "entirety of the circumstances," such that "inconsistent" representations may sustain a cause of action for fraud. The record establishes, however, that the circumstances surrounding that discovery response cannot support a cause of action for fraud. State Farm promptly informed Kim of the umbrella policy as soon as her attorney clarified that he was requesting the information. Defendants made this disclosure three months before Swann provided her inaccurate interrogatory response, which omitted the umbrella policy and which she promptly corrected to disclose the umbrella policy upon realizing the error. Thus, despite the prolonged litigation surrounding Swann's discovery responses, the fact remains that Kim was already aware of the umbrella policy—and the total combined policy limits available under Swann's liability coverages—within two weeks of filing suit. The actions by her counsel confirm that there was no confusion about the existence and limits of the umbrella policy. Specifically, in response to Swann's omission of the umbrella policy in her discovery responses, Kim's counsel immediately moved for sanctions, without even first conferring with Swann's counsel, stating that those responses were wrong for not identifying the umbrella policy.

¶ 37        Furthermore, none of the supposedly inconsistent representations identified by Kim were actually made by State Farm. Contrary to Kim's assertions, statements made by Swann or her counsel in discovery cannot be attributed to State Farm, which was not a party to the litigation at the time and did not sign or verify those discovery responses. Kim's reliance on *People ex rel. Terry v. Fisher*, 12 Ill. 2d 231 (1957), to support her position that the insurance company and the defendant in an auto case are one and the same, is misplaced. In *Fisher*, the court ruled that a defendant insured must disclose the existence of liability insurance in response to discovery requests. *Id.* at 238-39. The court concluded that the insured must disclose any relevant insurance policies under the Illinois discovery rules. *Id.* at 239. The opinion neither

discussed agency principles, nor suggested that an insurer has discovery obligations in an action against its insured, to which action the insurer is not a party. Illinois courts recognize that agency does not result from a mere insurer/insured relationship, and an attorney's duty is to his client, not the insurer, regardless of how his fees are paid. See *Mid-West Energy Consultants, Inc. v. Covenant Home, Inc.*, 352 Ill. App. 3d 160, 164 (2004) (parties to a contract are not each other's fiduciaries); *Apex Mutual Insurance Co. v. Christner*, 99 Ill. App. 2d 153, 171-72 (1968) (attorney's duty is to client-insured, even when insurer pays fees).

¶ 38        In addition, any statements made in the personal injury suit are protected by the litigation privilege. It is well established that statements made in the course of judicial proceedings are absolutely privileged and "[t]here is no civil cause of action for misconduct which occurred in prior litigation." (Internal quotation marks omitted.) *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶¶ 27-28 (affirming dismissal of claims against attorneys based on discovery violations, failure to disclose evidence, concealment of evidence, and misrepresentations in underlying litigation). This is true regardless of the individual's subjective motivation. *Id.* ¶ 30 ("As stated, motives and diligence before taking the challenged actions are irrelevant for purposes of the litigation privilege."); *Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶¶ 30-31 (the privilege immunizes statements and conduct and "an attorney's motives are irrelevant with respect to the applicability of the privilege, as is the reasonableness or unreasonableness of his conduct"); *Kim v. Hoseney*, 545 F. App'x 521, 522 (7th Cir. 2013) (recognizing absolute privilege under Illinois law against claims of fraud or intentional misrepresentations "for statements, no matter how reckless or dishonest" in judicial proceedings). When courts instruct parties to "attempt to redress injuries from misconduct in judicial proceedings in the same litigation," they contemplate that the parties will do so using traditional motion practice and sanctions procedures—not by pursuing litigation against a new party. See *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 19 (describing such a process). Here, Kim immediately moved for sanctions upon receipt of Swann's inaccurate discovery response in the personal injury action but then elected to abandon this remedy in favor of settling her claims against Swann.

¶ 39        Moreover, contrary to Kim's argument on appeal, State Farm has not waived the protection of the litigation privilege. Illinois law is clear that an affirmative defense raised for the first time in a motion for summary judgment "is timely and may be considered even if not raised in defendant's answer." *Salazar v. State Farm Mutual Automobile Insurance Co.*, 191 Ill. App. 3d 871, 876 (1989). According to the record, Kim never pled a discernible fraud claim against State Farm based on Swann's discovery responses; rather, Kim specifically alleged that any misrepresentation of coverage limits by the tortfeasor in a discovery response subjects that tortfeasor to sanctions. Only during the course of the original summary judgment briefing did Kim suggest she was pursuing an independent fraud claim based on Swann's discovery response, and State Farm properly raised the litigation privilege at that time. See, *e.g.*, *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 378-79 (2003) (denying motion to strike argument raised for the first time on reply in answer to argument advanced by moving party); see also *People v. Roberson*, 212 Ill. 2d 430, 440 (2004) (waiver rule is one of administrative convenience rather than a jurisdictional bar); accord *People v. Lann*, 261 Ill. App. 3d 456, 466 (1994).

¶ 40        Kim's common law and statutory fraud claims also fail to establish that State Farm deceived her with a material misrepresentation or omission. See *Freedberg*, 2012 IL App (1st)

110938, ¶ 36. For common law fraud, Kim must demonstrate that she relied on this deception to her detriment, while under the Consumer Fraud Act, she must establish that she sustained damages due to the misrepresentation. *Id.* Kim, however, identifies no deception because State Farm promptly disclosed the umbrella policy in response to counsel's request for clarification. Additionally, the cases cited by Kim arose in different states with different legal obligations and different procedural postures. See, *e.g.*, *Merritt v. State Farm Mutual Automobile Insurance Co.*, 544 S.E.2d 180, 182 (Ga. Ct. App. 2000) (Georgia statute specifically required insurers to disclose the existence of excess or umbrella coverage); *Pipkins v. State Farm Mutual Automobile Insurance Co.*, No. 16-83-SDD-EWD, 2016 WL 6518654, *4 (M.D. La. Aug. 17, 2016) (plaintiffs alleged that State Farm Mutual knowingly misrepresented " 'pertinent facts or insurance policy provisions relating to any coverages at issue,' " in violation of a Louisiana statute (emphasis omitted)); *Earl v. State Farm Mutual Automobile Insurance Co.*, 91 N.E.3d 1066, 1069 (Ind. Ct. App. 2018) (umbrella policy was not disclosed until after the jury returned a verdict at trial). None of these cases is probative of any deception here, where Illinois law is clear that insurers are not required to disclose umbrella policies under section 143.24b and State Farm promptly disclosed Swann's umbrella policy within two weeks of the filing of the personal injury lawsuit when specifically requested.

¶ 41        Further, the record precludes any inference that Kim was injured in reliance on a mistaken belief that Swann had only $100,000 in available insurance coverage related to the accident. In her discovery responses, Kim failed to identify a single specific action that she personally took based on such a mistaken belief. Moreover, Kim agreed that her attorney's knowledge was imputed to her, and the record shows that her attorney was not confused about the umbrella policy. See *Morris v. Margulis*, 197 Ill. 2d 28, 37 (2001) (submitting an affidavit inconsistent with a party's prior testimony does not create a disputed fact sufficient to survive summary judgment).

¶ 42        According to the record, Kim ultimately received the full coverage limits under Swann's automobile insurance policy ($100,000) and umbrella policy ($1 million). Nonetheless, Kim claims damages for emotional distress and the "time value of money." However, Kim did not disclose any basis for any emotional distress or the "time value of money" damages in her discovery responses and relied instead on her and her attorney's affidavits submitted in response to State Farm's summary judgment motion. But those affidavits are improper to the extent that they are inconsistent with Kim's discovery responses. See *id.*; *Xeniotis v. Satko*, 2014 IL App (1st) 131068, ¶ 70 (striking inconsistent affidavit as a change in testimony). Further, Kim identifies no Illinois law recognizing the "time value of money" as an independent theory of damages. Moreover, there was no delay here where State Farm informed Kim of the umbrella policy within two weeks of the filing of the personal injury lawsuit.

¶ 43        Kim also claims damages based on emotional distress, but this claim fails as a matter of law. Damages for fraud must be pecuniary in nature, for "the tort of common-law fraud is primarily addressed to the invasion of economic interests." *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 761 (1993); see also *Cangemi v. Advocate South Suburban Hospital*, 364 Ill. App. 3d 446, 469 (2006) ("Although some cases have extended this rule to include those things 'which the law recognizes as of pecuniary value,' a plaintiff's damages to support a claim of fraud must nevertheless be 'material,' and may not consist solely of emotional harm."). "A fraud action does not afford a remedy for harm to one's pride" or other emotional harm.

*Giammanco*, 253 Ill. App. 3d at 762; see also *Cangemi*, 364 Ill. App. 3d at 469-70 (citing cases).

¶ 44    Kim also lacks standing to sue under the Consumer Fraud Act. A plaintiff seeking to sue under the Consumer Fraud Act must either be a consumer or satisfy the "consumer nexus" test, which requires the plaintiff to have suffered damages resulting from conduct directed toward the market or which otherwise implicates consumer protection concerns. *Bank One Milwaukee v. Sanchez*, 336 Ill. App. 3d 319, 321-22 (2003). Kim, however, is a third-party beneficiary of an insurance policy issued by a defendant, and courts interpreting Illinois law have consistently rejected this theory of standing. See *McCarter v. State Farm Mutual Automobile Insurance Co.*, 130 Ill. App. 3d 97, 101 (1985) (holding third-party claimant under insurance policy was not a consumer under the Consumer Fraud Act); *Roppo v. The Travelers Cos.*, 100 F. Supp. 3d 636, 651 (N.D. Ill. 2015) (rejecting consumer nexus theory in similar case). Kim's reliance on *Elder v. Coronet Insurance Co.*, 201 Ill. App. 3d 733, 749 (1990), to support her argument for expanding the Consumer Fraud Act's scope is misplaced. *Elder*, as a matter involving a first-party claim by an insured against his own insurer, distinguished itself from *McCarter*, which involved a third-party claimant. *Id.* The other authorities cited by Kim do not address the issue of standing under the Consumer Fraud Act or even any claim under it. Rather, each of those cases involved a declaratory judgment action brought by the third-party claimant against an insurer. See, *e.g.*, *State Farm Fire & Casualty Co. v. Perez*, 387 Ill. App. 3d 549 (2008); *Holmes v. Federal Insurance Co.*, 353 Ill. App. 1062 (2004); *Reagor v. Travelers Insurance Co.*, 92 Ill. App. 3d 99 (1980); *M.F.A. Mutual Insurance Co. v. Cheek*, 34 Ill. App. 3d 209 (1975).

¶ 45    Further, Kim's theory does not satisfy the "consumer nexus" (or "consumer-at- large") test. Illinois courts have long held that the application of the Consumer Fraud Act is limited to deception "in the course of trade or commerce." As defined by the statute, "[t]he terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated." 815 ILCS 505/1(f) (West 2010). The mere fact that a defendant is a business that engages in commerce is insufficient to satisfy this element. In *Continental Assurance Co. v. Commonwealth Edison Co.*, 194 Ill. App. 3d 1085, 1093 (1990), the court concluded that although the Consumer Fraud Act is to be liberally construed, it could not reasonably be interpreted to include the type of fraud alleged by shareholders in the context of a stock redemption because the redemption of shares of stock did not constitute either any type of "advertising" or "offering for sale," or a "sale" or "distribution" of property as those terms are used in the Consumer Fraud Act. See also *Mosier v. Village of Holiday Hills*, 2019 IL App (2d) 180681, ¶ 20 (affirming dismissal of Consumer Fraud Act claim against village based on issuance of building permits because "[t]he Village did not advertise or offer anything for sale or sell anything").

¶ 46    Illinois courts have long recognized that a business may maintain a cause of action under the Consumer Fraud Act even when it was not a consumer of the defendant's goods, so long as "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 534 (1989). In *Sanchez*, the court extended the "consumer nexus" test to an individual. 336 Ill. App. 3d at 323-24. But in that case, the plaintiff alleged that the defendant forged her signature to bind her "to a commercial transaction through a

- 10 -

fraudulent act." *Id.* at 324. The court thus had "little trouble concluding" that those allegations implicated consumer protection concerns. *Id.* The same cannot be said here, where Kim failed to allege any wrong conduct by State Farm that impacted consumers. See *Roppo*, 100 F. Supp. 3d at 651, *aff'd*, 869 F.3d 568.

¶ 47     We conclude that the circuit court properly granted summary judgment in favor of State Farm on Kim's claims of common law and statutory fraud.

¶ 48                                    2. Negligent Misrepresentation

¶ 49     In Illinois, the tort of negligent misrepresentation is a narrow and limited exception to the *Moorman* doctrine (*Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982)), which generally bars a tort recovery for a purely economic loss. *Fox Associates, Inc. v. Robert Half International, Inc.*, 334 Ill. App. 3d 90, 94 (2002). The claim requires proof of

> "(1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the [speaker], (3) an intention to induce the other party to act, (4) action by the other party in reliance ***, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information." *Id.*

For the reasons discussed above, Kim cannot identify any false statement made by State Farm, let alone any negligent action taken to induce reliance.

¶ 50     In addition, a negligent misrepresentation claim may only be brought against a defendant who is "in the business of supplying information for the guidance of others in their business dealings" and provided untrue information to the plaintiff. *Id.* at 95. The sale of insurance policies is not the sale of "information," as contemplated under this exception. See *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 341 (2006); see also *Gondeck v. A Clear Title & Escrow Exchange, LLC*, 47 F. Supp. 3d 729, 749 (N.D. Ill. 2014) ("An insurance policy is 'a noninformational product' for purposes of the economic loss doctrine."). Moreover, defendants were not otherwise "in the business" of providing information to Kim to guide her business dealings, especially given the adverse nature of their relationship and the fact that Kim was not a State Farm policyholder. Nor can Kim establish any of the other elements of this tort based on the uncontroverted record, which shows there was no actionable misstatement or omission, reliance, or injury. See *Freedberg*, 2012 IL App (1st) 110938, ¶ 36 (no recovery for negligent misrepresentation absent proof plaintiff relied on misstatement to her detriment); *Fox Associates, Inc.*, 334 Ill. App. 3d at 94-96.

¶ 51     Further, the Illinois Supreme Court has rejected the notion that a plaintiff may seek damages for emotional distress based upon this exception to the *Moorman* doctrine. In *Brogan v. Mitchell International, Inc.*, 181 Ill. 2d 178, 185 (1998), the court recognized that "[t]here exists no broad duty to avoid misrepresentations that cause only emotional harm." The court emphasized the "limited nature" of liability for negligent misrepresentation, which "serves to preserve the proper sphere of contractual-based recovery and prevents the creation of tort liability which could unduly impede the flow of communication in society." *Id.*

¶ 52     We conclude that the trial court did not err in granting summary judgment to State Farm on Kim's claim for negligent misrepresentation.

¶ 53                                           C. Attorney Fees and Costs

¶ 54       Kim argues that she is entitled to attorney fees and costs under Section 155 of the Insurance Code based on State Farm's alleged "bad faith" or "unreasonable and vexatious acts constituting improper claims practices." Specifically, Kim contends that State Farm engaged in bad faith by allegedly failing to disclose the existence of Swann's umbrella policy limits. This claim is fatally deficient as a matter of law.

¶ 55       Section 155 permits a cause of action when "there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable." 215 ILCS 5/155(1) (West 2010). Binding Illinois Supreme Court precedent holds that penalties under section 155 are only available to the insured, not to third parties who are strangers to the policy.[3] See *Yassin v. Certified Grocers of Illinois, Inc.*, 133 Ill. 2d 458, 466 (1990) (dismissing plaintiff's third-party claim under section 155); *Stamps v. Caldwell*, 133 Ill. App. 2d 524, 528 (1971) (same); *Roppo*, 100 F. Supp. 3d at 652 ("the remedy embodied in section 155 of the Insurance Code does not extend to third parties").

¶ 56       We conclude that the circuit court properly granted summary judgment in State Farm's favor with respect to Kim's claim for section 155 fees and costs.

¶ 57                         D. Rule 191(b) Motion for Further Discovery

¶ 58       When a party contends that she needs to conduct discovery before responding to a motion for summary judgment, the party must submit an affidavit that satisfies the requirements of Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013). A court's decision to deny discovery requested under Rule 191(b) is a discovery ruling and will not be reversed absent an abuse of discretion. *Jordan v. Knafel*, 378 Ill. App. 3d 219, 235 (2007). A trial court abuses its discretion only when " 'no reasonable person would take the view adopted by the trial court.' " *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 96 (quoting *Foley v. Fletcher*, 361 Ill. App. 3d 39, 46 (2005)).

¶ 59       Discovery is not warranted under Rule 191(b) where the issues raised by a motion for summary judgment are questions of law, not of disputed fact. See *Kittleson v. United Parcel Service, Inc.*, 162 Ill. App. 3d 966, 968-69 (1987). A party invoking Rule 191(b) must show that the evidence he or she intends to secure will be sufficient to demonstrate a genuine fact issue pertinent to the pending motion for summary judgment. See *Meudt v. Travelers Insurance Co.*, 57 Ill. App. 3d 286, 291-92 (1978). Discovery is properly denied if a movant does not sufficiently describe the evidence he or she anticipates obtaining through the discovery sought, as Rule 191(b) is not intended to authorize "a 'fishing expedition.' " *Janda*, 2011 IL App (1st) 103552, ¶ 98. A movant also must demonstrate that discovery is the only vehicle for obtaining the facts he or she needs to oppose summary judgment. See Ill. S. Ct. R. 191(b) (eff. Jan. 4, 2013).

---

[3]The authorities cited by plaintiff do not contradict this conclusion. See *Loyola University Medical Center v. Med Care HMO*, 180 Ill. App. 3d 471 (1989) (allowing section 155 claim by assignee medical provider); *Garcia v. Lovellette*, 265 Ill. App. 3d 724 (1994) (allowing section 155 claim by passenger defined as an insured under the terms of the policy). Neither of these cases involved a third-party claim.

¶ 60 Kim's Rule 191 motion failed all of these tests. First, the court's January 7, 2020, ruling granted State Farm's summary judgment motion exclusively on purely legal grounds. And second, Kim's Rule 191(b) affidavits fail to support her claim for more discovery.

¶ 61 The court's January 7, 2020, ruling—granting summary judgment in favor of State Farm on issues of law—shows that no discovery could have changed those rulings and further discovery would have been futile. As discussed above, Kim failed to show that she was deceived, that she relied on any statement from State Farm, or that she sustained any cognizable damages arising from State Farm's alleged conduct. These were elements of her claims that were within her own knowledge and control. And Kim admitted she was never misled about the existence of Swann's umbrella policy and sustained no resulting injury. There was no question that Kim could have posed to anyone else that would have told her more about what she personally knew, what she personally believed, what she personally did, or what injuries she personally claimed to have suffered. See *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 281 Ill. App. 3d 1080, 1089 (1996) (affirming trial court's denial of Rule 191(b) motion where plaintiff failed to demonstrate how any further discovery would support its case). As a result, Kim failed to demonstrate that additional discovery would have created a genuine issue of fact pertinent to State Farm's summary judgment motion.

¶ 62 Rule 191(b) requires a party seeking discovery in the face of a summary judgment motion to state with specificity what discovery is needed, what the party believes the discovery will reveal, and the basis for the party's belief that the requested discovery will produce the party's sought-after proofs. *Janda*, 2011 IL App (1st) 103552, ¶ 98; *Meudt*, 57 Ill. App. 3d at 291-92. Kim's affidavit did none of these things. Far from being specific, Kim sought extensive class-wide discovery, including responses to over 70 requests for production spanning a 31-year timeframe; production of every automobile insurance claim file in which a person living in Illinois was injured by an allegedly liable driver who was insured by State Farm at the time and also had an umbrella policy as of the date of the accident; and the depositions of at least seven individuals, including State Farm adjusters O'Connor and Ruvalcaba, State Farm agent Dan Catanzara, State Farm executive Phil Supple, a State Farm corporate representative, Swann (who was already deposed about her discovery response in the personal injury suit), and Swann's attorney.

¶ 63 Kim did not demonstrate that this discovery was necessary to allow her to meaningfully oppose summary judgment on her claims. Kim had already identified the communications underlying her fraud claims—*i.e.*, her counsel's May 2012 communications with State Farm and Swann's August 2012 interrogatory response in her personal injury suit. There is no dispute about the occurrence of those communications, when they occurred, or what was said in each. Nor could Kim contend that she needed discovery from State Farm regarding her attorney's communications with State Farm, whether she was deceived, whether she acted in reliance on an incorrect belief regarding Swann's available insurance coverage, or any injuries she claimed to have sustained as a result. In short, Kim does not and cannot demonstrate entitlement to conduct any further discovery in this matter. See *Meudt*, 57 Ill. App. 3d at 291-92; *Emerson Electric*, 281 Ill. App. 3d at 1089.

¶ 64 Kim also mischaracterizes State Farm's summary judgment motion as a "*Celotex*-type" motion that unfairly raises a premature attack on her inability to muster the proofs she needs. A "*Celotex*-type" motion is one in which a defendant seeks summary judgment based on the plaintiff's lack of proofs regarding matters outside the plaintiff's control and knowledge. *Jiotis*

- 13 -

*v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶¶ 23, 25-28, 44-47 (Rule 191 discovery properly allowed early in action, despite defendant's submission of its own affidavits denying allegations of complaint; plaintiff identified deponents and gave bases for relief regarding what specific testimony those individuals would provide as to information beyond the plaintiff's control). Here, in contrast, State Farm relied on information Kim supplied in discovery and her own admissions about matters fully within her knowledge that defeated her claims.

¶ 65 We conclude that the circuit court properly denied Kim's Rule 191(b) motion for further discovery.

¶ 66                                III. CONCLUSION

¶ 67 For the foregoing reasons, we affirm the judgment of the circuit court, which granted State Farm's motion for summary judgment and denied Kim's motion for further discovery.

¶ 68 Affirmed.